FILED by __MM__ D.C.

Jul 14, 2022

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
# 22-20311-CR-WILLIAMS/MCALILEY

Case No. _____

18 U.S.C. § 371
15 U.S.C. § 78dd-2
18 U.S.C. § 2
18 U.S.C. § 1956
18 U.S.C. § 1957
18 U.S.C. § 981(a)(1)(C)
18 U.S.C. § 982(a)(1)

UNITED STATES OF AMERICA

vs.

ESTEBAN EDUARDO MERLO HIDALGO,
CRISTIAN PATRICIO PINTADO GARCIA,
and LUIS LENIN MALDONADO MATUTE,

Defendants.
_____/

## INDICTMENT

The Grand Jury charges that:

### GENERAL ALLEGATIONS

At all times relevant to this Indictment, unless otherwise specified:

### RELEVANT STATUTORY BACKGROUND

1.     The Foreign Corrupt Practices Act of 1977, as amended, Title 15, United States Code, Sections 78dd-1, *et seq.* (the "FCPA"), was enacted by Congress for the purpose of, among other things, making it unlawful for certain classes of persons and entities to act corruptly in furtherance of an offer, promise, authorization, or payment of money or anything of value to a foreign government official for the purpose of influencing the foreign official, inducing the foreign official to take or omit certain acts, and securing an improper advantage in order to assist those classes of persons in obtaining or retaining business for, or directing business to, any person.

1

## RELEVANT INDIVIDUALS AND ENTITIES

2.       Defendant **ESTEBAN EDUARDO MERLO HIDALGO** was an Ecuadorian and United States dual citizen who resided in Miami, Florida. **MERLO** operated and controlled Intermediary Company (defined below). **MERLO** was a "domestic concern" as that term is defined in the FCPA, Title 15, United States Code, Section 78dd-2(h)(1)(A).

3.       Defendant **LUIS LENIN MALDONADO MATUTE** was an Ecuadorian citizen and Costa Rica resident and the President of Intermediary Company. **MALDONADO** acted as an agent of **ESTEBAN EDUARDO MERLO HIDALGO**, and was thus an agent of a "domestic concern" as that term is used in the FCPA, Title 15, United States Code, Section 78dd-2(a).

4.       Defendant **CRISTIAN PATRICIO PINTADO GARCIA** was an Ecuadorian and Italian dual citizen and resident of Costa Rica and the General Manager of Intermediary Company. **PINTADO** acted as an agent of **ESTEBAN EDUARDO MERLO HIDALGO**, and was thus an agent of a "domestic concern" as that term is used in the FCPA, Title 15, United States Code, Section 78dd-2(a).

5.       Seguros Sucre S.A. ("Seguros Sucre") was a state-owned insurance company of Ecuador.  Seguros Sucre was controlled by the government of Ecuador and performed a function that Ecuador treated as its own, and was an "instrumentality" of the Ecuadorian government as that term is used in the FCPA, Title 15, United States Code, Section 78dd-2.

6.       Seguros Rocafuerte S.A. ("Rocafuerte") was a state-owned insurance company of Ecuador.  Rocafuerte was controlled by the government of Ecuador and performed a function that Ecuador treated as its own, and was an "instrumentality" of the Ecuadorian government as that term is used in the FCPA, Title 15, United States Code, Section 78dd-2.

7.       Intermediary Company collectively refers to two companies whose identities are

2

known to the Grand Jury, that were registered in Panama and Ecuador, operated in Miami, Florida, and acted as intermediaries for reinsurance companies. **ESTEBAN EDUARDO MERLO HIDALGO** operated and controlled Intermediary Company.

8.     Juan Ribas Domenech ("Ribas") was a citizen of Ecuador who served as the chairman of Seguros Sucre and Rocafuerte and as an advisor to a then-high ranking executive branch official in the Ecuadorian government from at least in or around 2013 through at least in or around 2017. Ribas was a "foreign official" as the term is defined in the FCPA, Title 15, United States Code, Section 78dd-2(h)(2)(A).

9.     Foreign Official 1, an individual whose identity is known to the Grand Jury, was a citizen of Ecuador who served as an official of Seguros Sucre from at least in or around 2013 through at least in or around 2017. Foreign Official 1 was a "foreign official" as the term is defined in the FCPA, Title 15, United States Code, Section 78dd-2(h)(2)(A).

10.     Foreign Official 2, an individual whose identity is known to the Grand Jury, was a citizen of Ecuador who served as an official of Seguros Sucre from at least in or around 2015 through at least in or around 2019. Foreign Official 2 was a "foreign official" as the term is defined in the FCPA, Title 15, United States Code, Section 78dd-2(h)(2)(A).

11.     Foreign Official 3, an individual whose identity is known to the Grand Jury, served as an official of Seguros Sucre from at least in or around 2014 through at least in or around 2018. Foreign Official 3 was a "foreign official" as the term is defined in the FCPA, Title 15, United States Code, Section 78dd-2(h)(2)(A).

12.     Fernando Martinez Gomez ("Martinez") was a United States and Ecuadorian dual citizen who worked as a financial advisor for an international investment firm from in or around 2009 through in or around 2016. Martinez was a "domestic concern," as that term is defined in

the FCPA, Title 15, United States Code, Section 78dd-2(h)(1)(A).

13.     Reinsurance Broker 1, a company whose identity is known to the Grand Jury, was a reinsurance broker based in the United Kingdom.

14.     Reinsurance Broker 1 Executive, an individual whose identity is known to the Grand Jury, was an executive of Reinsurance Broker 1.

15.     Reinsurance Broker 2, a company whose identity is known to the Grand Jury, was a reinsurance broker based in the United Kingdom.

16.     Uruguay Entity Panama Account was an account held in Panama by an entity domiciled in Uruguay.   **CRISTIAN PATRICIO PINTADO GARCIA** was the legal representative of the Uruguayan entity.

### COUNT 1
### Conspiracy to Violate the Foreign Corrupt Practices Act
### (18 U.S.C. § 371)

1.     Paragraphs 1 through 16 of the General Allegations Section are re-alleged and incorporated by reference as though fully set forth herein.

2.     From in or around 2013, continuing until at least 2018, in the Southern District of Florida and elsewhere, the defendants,

**ESTEBAN EDUARDO MERLO HIDALGO,**
**CRISTIAN PATRICIO PINTADO GARCIA,**
and
**LUIS LENIN MALDONADO MATUTE,**

did knowingly and willfully, that is, with the intent to further the object of the conspiracy, combine, conspire, confederate, and agree with others known and unknown to the Grand Jury, to commit an offense against the United States, that is: being a domestic concern and an agent of a domestic concern, to willfully and corruptly make use of the mails and means and instrumentalities of interstate commerce in furtherance of an offer, payment, promise to pay, and authorization of the

4

payment of money, offer, gift, promise to give, and authorization of the giving of anything of value to a foreign official, and to a person, while knowing that all and a portion of such money and thing of value would be and had been offered, given, and promised, directly and indirectly, to a foreign official, for purposes of: (i) influencing an act and decision of such foreign official in his or her official capacity; (ii) inducing such foreign official to do and omit to do an act in violation of the lawful duty of such official; (iii) securing an improper advantage; and (iv) inducing such foreign official to use his or her influence with a foreign government and agencies and instrumentalities thereof to affect and influence any act and decision of such government and agencies and instrumentalities, in order to assist **ESTEBAN EDUARDO MERLO HIDALGO** and others in obtaining and retaining business for and with, and directing business to, **MERLO, MALDONADO, PINTADO,** Intermediary Company, Reinsurance Broker 1, Reinsurance Broker 2, and others, in violation of Title 15, United States Code, Section 78dd-2.

## PURPOSE OF THE CONSPIRACY

It was the purpose and object of the conspiracy for the defendants and their co-conspirators to unlawfully enrich themselves by bribing Ecuadorian officials to obtain and retain business from Ecuadorian entities and instrumentalities controlled by the Ecuadorian government for themselves and others. It was further a purpose and object of the conspiracy to conceal the bribe payments, proceeds, and funds related to the corrupt scheme.

## MANNER AND MEANS OF THE CONSPIRACY

The manner and means by which **ESTEBAN EDUARDO MERLO HIDALGO, LUIS LENIN MALDONADO MATUTE, CRISTIAN PATRICIO PINTADO GARCIA,** and their co-conspirators sought to accomplish the purpose of the conspiracy included, among other things, the following conduct in the Southern District of Florida and elsewhere:

5

1.     **ESTEBAN EDUARDO MERLO HIDALGO, LUIS LENIN MALDONADO MATUTE**, and **CRISTIAN PATRICIO PINTADO GARCIA**, together with others, while in the Southern District of Florida and elsewhere, did offer to pay, promise to pay, and authorize the payment of bribes, directly and indirectly, to and for the benefit of foreign officials in Ecuador, including Ribas, Foreign Official 1, Foreign Official 2, and Foreign Official 3, to secure their assistance in awarding business to Intermediary Company, Reinsurance Broker 1, and Reinsurance Broker 2.

2.     **ESTEBAN EDUARDO MERLO HIDALGO**, together with others, including Ribas, while in the Southern District of Florida and elsewhere, did discuss in person and by other means the manner and means by which bribes were to be paid.

3.     **ESTEBAN EDUARDO MERLO HIDALGO, LUIS LENIN MALDONADO MATUTE**, and **CRISTIAN PATRICIO PINTADO GARCIA**, together with others, while in the Southern District of Florida and elsewhere, used Intermediary Company, and bank accounts controlled by **MERLO, MALDONADO, PINTADO**, and others in the United States, Switzerland, Panama, and elsewhere to promote the illegal bribery scheme and to conceal the nature and purpose of the proceeds of the illegal bribery scheme.

4.     Reinsurance Broker 1 and Reinsurance Broker 2 engaged **LUIS LENIN MALDONADO MATUTE** and **CRISTIAN PATRICIO PINTADO GARCIA**, through Intermediary Company, to assist in obtaining business from Seguros Sucre and Rocafuerte. Intermediary Company was compensated with a portion of the brokerage commission that resulted from the business obtained by Reinsurance Broker 1 and Reinsurance Broker 2 from Seguros Sucre and Rocafuerte.

5.     **ESTEBAN EDUARDO MERLO HIDALGO** instructed and directed **LUIS**

LENIN MALDONADO MATUTE and **CRISTIAN PATRICIO PINTADO GARCIA** to pay and cause bribe payments to be made to Ribas, Foreign Official 1, and others, in exchange for directing business through Intermediary Company to Reinsurance Broker 1 and Reinsurance Broker 2. These corrupt payments were often made through accounts in Panama to accounts in the United States, including in the Southern District of Florida, and elsewhere.

6.      **ESTEBAN EDUARDO MERLO HIDALGO, LUIS LENIN MALDONADO MATUTE**, and **CRISTIAN PATRICIO PINTADO GARCIA** concealed the true nature of the bribe payments and executed the scheme by directing payments to shell companies for the benefit of foreign officials and **MERLO** used false contracts that described services that were not provided.

7.      **ESTEBAN EDUARDO MERLO HIDALGO, LUIS LENIN MALDONADO MATUTE**, and **CRISTIAN PATRICIO PINTADO GARCIA** paid and caused the transfer of bribe proceeds and funds related to the scheme to the United States, including into the Southern District of Florida, and elsewhere.

8.      **ESTEBAN EDUARDO MERLO HIDALGO, LUIS LENIN MALDONADO MATUTE**, and **CRISTIAN PATRICIO PINTADO GARCIA** caused the transfer of bribe proceeds and funds related to the scheme to bank accounts held in their own names and for their benefit in the Southern District of Florida and elsewhere.

### Overt Acts

In furtherance of the conspiracy, and to affect the objects thereof, **ESTEBAN EDUARDO MERLO HIDALGO, LUIS LENIN MALDONADO MATUTE, CRISTIAN PATRICIO**

7

**PINTADO GARCIA**, and others, committed the following overt acts, among others, in the Southern District of Florida, and elsewhere:

1.      On or about December 5, 2013, **LUIS LENIN MALDONADO MATUTE** emailed an employee of Reinsurance Broker 1, along with **CRISTIAN PATRICIO PINTADO GARCIA,** saying that commissions for certain Rocafuerte business would be split 25% to Reinsurance Broker 1, 25% to Reinsurance Broker 2, and 50% to "Ecuador."

2.      On or about January 2, 2014, **CRISTIAN PATRICIO PINTADO GARCIA** responded to an email, copying **LUIS LENIN MALDONADO MATUTE**, from an employee of Reinsurance Broker 1 proposing a different split of the commissions, stating: "Only want to mention and remember the commitment we have to comply with local people who have given us the opportunity to get these public business (local acquisition costs). For this reason it is necessary to maintain the agreed commission percentages, (50% for Ecuador and 50% for London). Failure to meet our commitments to the local people, will could [sic] have the problem of losing the account and not have new opportunities for new public business . . . With only 25% [Intermediary Company] cannot pay the local cost of acquisition."

3.      On or about January 14, 2014, **LUIS LENIN MALDONADO MATUTE** sent an email to an employee of Reinsurance Broker 1, copying **CRISTIAN PATRICIO PINTADO GARCIA,** advising that a portion of the commission would be paid to "local people involved commercial and politically in obtaining achievement of this business," and stating, "[m]ore explicit I can't be."

4.      On or about March 12, 2014, **CRISTIAN PATRICIO PINTADO GARCIA** caused a wire transfer to be made from an account in his name in the Southern District of Florida

in the amount of approximately $52,540 to an account in the Southern District of Florida for the benefit of Ribas.

5.     On or about August 31, 2015, **CRISTIAN PATRICIO PINTADO GARCIA** caused a wire transfer of approximately $199,988 to be made from an account held in the name of Intermediary Company in Panama to an account in the Southern District of Florida for the benefit of Ribas.

6.     On or about September 25, 2015, **CRISTIAN PATRICIO PINTADO GARCIA** caused a wire transfer of approximately $30,000 to be made from an account held in the name of Intermediary Company in Panama to a United States account held in the name of Foreign Official 3.

7.     On or about September 29, 2015, Martinez, a financial advisor for Ribas, sent an email to **ESTEBAN EDUARDO MERLO HIDALGO** with bank account information for Ribas's Swiss bank account.

8.     On or about October 2, 2015, **ESTEBAN EDUARDO MERLO HIDALGO**, while in the Southern District of Florida, emailed Martinez a model contract to be used for providing a purported justification for the investments to be made in Ribas's company, and advising that Martinez could make any modifications according to his best criteria.

9.     On or about October 22, 2015, Martinez emailed **ESTEBAN EDUARDO MERLO HIDALGO** an executed copy of the contract referred to above in Paragraph 8 between Intermediary Company 1 and Ribas's company.

10.    On or about December 1, 2015, **CRISTIAN PATRICIO PINTADO GARCIA** caused a wire transfer in the amount of approximately $76,000 to be made from an account held

in the name of Intermediary Company in Panama through a correspondent bank in the United States to an account in Switzerland held in the name of Ribas's company.

11.     On or about January 4, 2016, **CRISTIAN PATRICIO PINTADO GARCIA** caused a wire transfer in the amount of approximately $54,000 to be made from an account held in the name of Intermediary Company in Panama through a correspondent bank in the United States to an account in Switzerland held in the name of Ribas's company.

12.     On or about February 17, 2016, **LUIS LENIN MALDONADO MATUTE** sent an email to Reinsurance Broker 1 Executive asking him to buy Wimbledon tickets for "[t]he senior partner of our group" who "resides in Miami."

13.     On or about April 4, 2016, Reinsurance Broker 1 Executive sent an email to **LUIS LENIN MALDONADO MATUTE**, copying **CRISTIAN PATRICIO PINTADO GARCIA**, regarding a meeting in Miami the following day between **ESTEBAN EDUARDO MERLO HIDALGO** and Reinsurance Broker 1 Executive, asking, "Do I discuss [Intermediary Company], what about the commissions we give to you etc etc. Does he know our relationship and how much does he know?"

14.     On or about April 4, 2016, **LUIS LENIN MALDONADO MATUTE** sent an email in response to Reinsurance Broker 1 Executive, copying **CRISTIAN PATRICIO PINTADO GARCIA**, stating, "Esteban knows exactly how we operate and detail of our operations. It is as if you were talking with us."

15.     On or about April 5, 2016, **ESTEBAN EDUARDO MERLO HIDALGO** met with Reinsurance Broker 1 Executive in the Southern District of Florida.

16.     On or about April 6, 2016, **ESTEBAN EDUARDO MERLO HIDALGO**, while in the Southern District of Florida, sent a WhatsApp message to **LUIS LENIN MALDONADO**

10

**MATUTE** about giving the broker from Reinsurance Broker 1 (translated from Spanish) "more production" and asking **MALDONADO** to advise about any new business to tell Ribas to give to Reinsurance Broker 1.

17. On or about August 10, 2016, **CRISTIAN PATRICIO PINTADO GARCIA** caused a wire transfer in the amount of approximately $29,988 to be made from an Intermediary Company account in Panama to a United States account held in the name of Foreign Official 2.

18. On or about October 6, 2016, **CRISTIAN PATRICIO PINTADO GARCIA** caused a wire transfer in the amount of approximately $20,000 to be made from an Intermediary Company account in Panama to a United States account held in the name of Foreign Official 3.

19. On or about November 25, 2016, **CRISTIAN PATRICIO PINTADO GARCIA** caused a wire transfer in the amount of approximately $19,998 to be made from an Intermediary Company account in Panama to a United States account held in the name of Foreign Official 2.

20. On or about March 16, 2017, Reinsurance Broker 2 transferred approximately $946,377 to an account held in the name of Intermediary Company in Panama for the benefit of **ESTEBAN EDUARDO MERLO HIDALGO, LUIS LENIN MALDONADO MATUTE,** and **CRISTIAN PATRICIO PINTADO GARCIA.**

21. On or about April 7, 2017, **CRISTIAN PATRICIO PINTADO GARCIA** caused a payment from Uruguay Entity Panama Account of approximately $10,000 to a United States account held in the name of Foreign Official 2.

22. On or about April 17, 2017, **CRISTIAN PATRICIO PINTADO GARCIA** caused a wire transfer in the amount of approximately $100,000 to be made from an Intermediary Company account in Panama to an account held in the name of **ESTEBAN EDUARDO MERLO HIDALGO** in the Southern District of Florida.

11

23.     On or about August 30, 2017, Reinsurance Broker 1 transferred approximately $116,506 to an account held in the name of Intermediary Company in Panama for the benefit of **ESTEBAN EDUARDO MERLO HIDALGO, LUIS LENIN MALDONADO MATUTE,** and **CRISTIAN PATRICIO PINTADO GARCIA.**

24.     On or about December 4, 2017, Reinsurance Broker 2 transferred approximately $1,067,251 to an account held in the name of Intermediary Company in Panama for the benefit of **ESTEBAN EDUARDO MERLO HIDALGO, LUIS LENIN MALDONADO MATUTE** and **CRISTIAN PATRICIO PINTADO GARCIA.**

25.     On or about December 7, 2017, **CRISTIAN PATRICIO PINTADO GARCIA** caused a wire transfer in the amount of approximately $50,000 to be made from an Intermediary Company account in Panama to an account held in the name of **LUIS LENIN MALDONADO MATUTE** in the Southern District of Florida.

26.     On or about December 7, 2017, **CRISTIAN PATRICIO PINTADO GARCIA** caused a wire transfer in the amount of approximately $78,577 to be made from an Intermediary Company account in Panama to a Spain account held in the name of **ESTEBAN EDUARDO MERLO HIDALGO.**

27.     On or about December 7, 2017, **CRISTIAN PATRICIO PINTADO GARCIA** caused a wire transfer in the amount of approximately $20,000 to be made from an Intermediary Company account in Panama to an Isle of Man account held in the name of **PINTADO.**

28.     On or about April 4, 2018, **CRISTIAN PATRICIO PINTADO GARCIA** caused a wire transfer in the amount of approximately $50,000 to be made from Uruguay Entity Panama Account to a United States account held in the name of Foreign Official 2.

All in violation of Title 18, United States Code, Section 371.

12

**COUNT 2**
**Foreign Corrupt Practices Act**
**(15 U.S.C. § 78dd-2; 18 U.S.C. § 2)**

1.      Paragraphs 1 through 16 of the General Allegations Section and paragraphs 1 through 8 of the Manner and Means Section of Count 1 are realleged and incorporated by reference as though fully set forth herein.

2.      On or about April 6, 2016, in the Southern District of Florida and elsewhere, the defendants,

**ESTEBAN EDUARDO MERLO HIDALGO,**
**CRISTIAN PATRICIO PINTADO GARCIA,**
and
**LUIS LENIN MALDONADO MATUTE,**

being a domestic concern and an agent of a domestic concern did willfully use and cause to be used and aid, abet, counsel, command, induce, and procure the use of the mails and means and instrumentalities of interstate commerce corruptly in furtherance of an offer, payment, promise to pay, and authorization of the payment of money, offer, gift, promise to give, and authorization of the giving of anything of value to a foreign official, and to a person, while knowing that all and a portion of such money and thing of value would be and had been offered, given, and promised, directly and indirectly, to a foreign official, for purposes of: (i) influencing an act and decision of such foreign official in his or her official capacity; (ii) inducing such foreign official to do and omit to do an act in violation of the lawful duty of such official; (iii) securing an improper advantage; and (iv) inducing such foreign official to use his or her influence with a foreign government and agencies and instrumentalities thereof to affect and influence any act and decision of such government and agencies and instrumentalities, in order to assist **ESTEBAN EDUARDO MERLO HIDALGO** and others in obtaining and retaining business for and with, and directing business to, **MERLO, MALDONADO, PINTADO,** Intermediary Company, Reinsurance Broker

13

1, Reinsurance Broker 2, and others, to wit, **MERLO** sent a WhatsApp message to **MALDONADO** about giving the broker from Reinsurance Broker 1 (translated from Spanish) "more production" and asking **MALDONADO** to advise about any new business to tell Ribas to give to Reinsurance Broker 1.

In violation of Title 15, United States Code, Section 78dd-2, and Title 18, United States Code, Section 2.

## COUNT 3
### Conspiracy to Commit Money Laundering
### (18 U.S.C. § 1956(h))

1. Paragraphs 1 through 16 of the General Allegations Section and paragraphs 1 through 8 of the Manner and Means Section of Count 1 are realleged and incorporated by reference as though fully set forth herein.

2. From in or around 2013, and continuing through in or around May 2018, in the Southern District of Florida, and elsewhere, the defendants,

**ESTEBAN EDUARDO MERLO HIDALGO,**
**CRISTIAN PATRICIO PINTADO GARCIA,**
and
**LUIS LENIN MALDONADO MATUTE,**

did knowingly and voluntarily combine, conspire, confederate and agree with each other and with others known and unknown to the Grand Jury, to knowingly conduct a monetary transaction affecting interstate and foreign commerce, by, though, and to a financial institution, in criminally derived property of a value greater than $10,000, such property having been derived from a specified unlawful activity, and knowing that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, in violation of Title 18, United States Code, Section 1957.

14

It is further alleged that the specified unlawful activity is the following: (a) a felony violation of the FCPA, Title 15, United States Code, Section 78dd-2: and (b) an offense against a foreign nation, specifically Ecuador, involving bribery of a public official, and the misappropriation, theft, and embezzlement of public funds by and for the benefit of a public official, pursuant to Title 18, United States Code, Section 1956(c)(7)(B)(iv):

All in violation of Title 18, United States Code, Section 1956(h).

## COUNTS 4-7
### Engaging in Transactions in Criminally Derived Property
### (18 U.S.C. § 1957 and 2)

3.      Paragraphs 1 through 16 of the General Allegations Section and paragraphs 1 through 8 of the Manner and Means Section of Count 1 are re-alleged and incorporated by reference as though fully set forth herein.

4.      On or about the dates set forth in each Count below, in the Southern District of Florida and elsewhere, the defendants,

**ESTEBAN EDUARDO MERLO HIDALGO,**
**CRISTIAN PATRICIO PINTADO GARCIA,**
and
**LUIS LENIN MALDONADO MATUTE,**

did knowingly engage in, and aid, abet, and cause others to engage in, and attempt to engage in, a monetary transaction affecting interstate and foreign commerce, by, though, and to a financial institution, in criminally derived property of a value greater than $10,000, such property having been derived from a specified unlawful activity, and knowing that the property involved in the financial transaction represented the proceeds of some form of unlawful activity.  It is further alleged that the specified unlawful activity is the following: (a) a felony violation of the FCPA, Title 15, United States Code, Section 78dd-2: and (b) an offense against a foreign nation, specifically Ecuador, involving bribery of a public official, and the misappropriation, theft, and

embezzlement of public funds by and for the benefit of a public official, pursuant to Title 18, United States Code, Section 1956(c)(7)(B)(iv):

| Count | Approximate Date | Description of Transaction |
|:---:|:---:|:---|
| 4 | March 23, 2017 | Wire transfer in the amount of approximately $87,488 from an account held in the name of Intermediary Company in Panama to an account in **MERLO**'s name in the Southern District of Florida. |
| 5 | July 24, 2017 | Wire transfer in the amount of approximately $32,514 from a bank account held in the name of Intermediary Company in Panama to a private school located in the Southern District of Florida for the benefit of an individual associated with **MERLO**. |
| 6 | April 9, 2018 | Wire transfer in the amount of approximately $36,332 from a bank account held in the name of Intermediary Company in Panama to a private school located in the Southern District of Florida for the benefit of an individual associated with **MERLO**. |
| 7 | May 24, 2018 | Wire transfer in the amount of approximately $33,198 from a bank account held in the name of Intermediary Company in Panama to a private school located in the Southern District of Florida for the benefit of an individual associated with **MERLO**. |

In violation of Title 18, United States Code, Sections 1957 and 2.

## FORFEITURE
### (18 U.S.C. §§ 981(a)(1)(C) and 982(a)(1))

1.     The allegations of this Indictment are re-alleged and by this reference fully incorporated herein for the purpose of alleging forfeiture to the United States of America of certain property in which the defendants, **ESTEBAN EDUARDO MERLO HIDALGO, CRISTIAN PATRICIO PINTADO GARCIA,** and **LUIS LENIN MALDONADO MATUTE,** have an interest.

16

2.     Upon conviction of a violation of Title 15, United States Code, Section 78dd-2, or a conspiracy to commit such an offense, as alleged in this Indictment, the defendants, **ESTEBAN EDUARDO MERLO HIDALGO**, **CRISTIAN PATRICIO PINTADO GARCIA**, and **LUIS LENIN MALDONADO MATUTE**, shall forfeit to the United States any property, real or personal, which constitutes or is derived from proceeds traceable to such offense, pursuant to Title 18, United States Code, Section 981(a)(1)(C).

3.     Upon conviction of a violation of Title 18, United States Code, Section 1957, as alleged in this Indictment, the defendants, **ESTEBAN EDUARDO MERLO HIDALGO**, **CRISTIAN PATRICIO PINTADO GARCIA**, and **LUIS LENIN MALDONADO MATUTE**, shall forfeit to the United States any property, real or personal, involved in such offense, or any property traceable to such property, pursuant to Title 18, United States Code, Section 982(a)(1).

All pursuant to Title 18, United States Code, Section 982(a)(1), and the procedures set forth in Title 21, United States Code, Section 853, as incorporated by Title 18, United States Code, 982(b)(1).

A TRUE BILL

FOREPERSON

LORINDA I. LARYEA
ACTING CHIEF, FRAUD SECTION
CRIMINAL DIVISION

Alexander Kramer
Assistant Chief
Drew Bradylyons
James Mandolfo
Katherine Raut
Trial Attorneys

17

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

**UNITED STATES OF AMERICA**

**CASE NO.:**

v.

ESTEBAN EDUARDO MERLO HIDALGO,
CRISTIAN PATRICIO PINTADO GARCIA,
and LUIS LENIN MALDONADO MATUTE /
_____
Defendants.

**CERTIFICATE OF TRIAL ATTORNEY\***

**Superseding Case Information:**

**Court Division** (select one)

☑ Miami   ☐ Key West   ☐ FTP
☐ FTL   ☐ WPB

New Defendant(s) (Yes or No)
Number of New Defendants
Total number of New Counts

I do hereby certify that:

1. I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2. I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. §3161.

3. Interpreter: (Yes or No) Yes
   List language and/or dialect: Spanish

4. This case will take   7   days for the parties to try.

5. Please check appropriate category and type of offense listed below:

   (Check only one)                    (Check only one)
   I    ☐ 0 to  5 days                 ☐ Petty
   II   ☑ 6 to 10 days                 ☐ Minor
   III  ☐ 11 to 20 days                ☐ Misdemeanor
   IV   ☐ 21 to 60 days                ☑ Felony
   V    ☐ 61 days and over

6. Has this case been previously filed in this District Court? (Yes or No) No
   If yes, Judge                        Case No.

7. Has a complaint been filed in this matter? (Yes or No) No
   If yes, Magistrate Case No.

8. Does this case relate to a previously filed matter in this District Court? (Yes or No) Yes
   If yes, Judge Gayles                 Case No. 20-cr-20179

9. Defendant(s) in federal custody as of

10. Defendant(s) in state custody as of

11. Rule 20 from the                    District of

12. Is this a potential death penalty case? (Yes or No) No

13. Does this case originate from a matter pending in the Northern Region of the U.S. Attorney's Office prior to August 8, 2014 (Mag. Judge Shaniek Maynard? (Yes or No) No

14. Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to October 3, 2019 (Mag. Judge Jared Strauss? (Yes or No) No

By: _____

KATHERINE RAUT
DOJ Trial Attorney
Court ID No.   A5502213

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

### PENALTY SHEET

**Defendant's Name: ESTEBAN EDUARDO MERLO HIDALGO**

**Case No:** _____

Count #: 1

   Conspiracy to Violate the Foreign Corrupt Practices Act

   18 U.S.C. § 371
* **Max. Term of Imprisonment:**   Five (5) years' imprisonment
* **Mandatory Min. Term of Imprisonment (if applicable):**   N/A
* **Max. Supervised Release:**   Three (3) years
* **Max. Fine:**   $53,007,672   (18 U.S.C. § 3571(d))

Count #: 2

   Foreign Corrupt Practices Act

   15 U.S.C. § 78dd-2; 18 U.S.C. § 2
* **Max. Term of Imprisonment:**   Five (5) years' imprisonment
* **Mandatory Min. Term of Imprisonment (if applicable):**   N/A
* **Max. Supervised Release:**   Three (3) years
* **Max. Fine:**   $53,007,672   (18 U.S.C. § 3571(d))

Count #: 3

   Conspiracy to Commit Money Laundering

   18 U.S.C. § 1956(h)
* **Max. Term of Imprisonment:**   Ten (10) years' imprisonment
* **Mandatory Min. Term of Imprisonment (if applicable):**   N/A
* **Max. Supervised Release:**   Three (3) years
* **Max. Fine:**   $53,007,672   (18 U.S.C. § 3571(d))

**\*Refers only to possible term of incarceration, supervised release and fines.   It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.**

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## PENALTY SHEET

**Defendant's Name: <u>ESTEBAN EDUARDO MERLO HIDALGO</u>**

**Case No:** _____

Count #: 4-7

   <u>Engaging in Transactions in Criminally Derived Property</u>

   <u>18 U.S.C. §§ 1957 and 2</u>

* **Max. Term of Imprisonment:**   Ten (10) years' imprisonment
* **Mandatory Min. Term of Imprisonment (if applicable):**   N/A
* **Max. Supervised Release:**   Three (3) years
* **Max. Fine:**   $53,007,672   (18 U.S.C. § 3571(d))

**\*Refers only to possible term of incarceration, supervised release and fines.   It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.**

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name: <u>CRISTIAN PATRICIO PINTADO GARCIA</u>**

**Case No:** _____

Count #: 1

   Conspiracy to Violate the Foreign Corrupt Practices Act

   18 U.S.C. § 371

* **Max. Term of Imprisonment:**   Five (5) years' imprisonment
* **Mandatory Min. Term of Imprisonment (if applicable):**   N/A
* **Max. Supervised Release:**   Three (3) years
* **Max. Fine:**   $53,007,672   (18 U.S.C. § 3571(d))

Count #: 2

   Foreign Corrupt Practices Act

   15 U.S.C. § 78dd-2; 18 U.S.C. § 2

* **Max. Term of Imprisonment:**   Five (5) years' imprisonment
* **Mandatory Min. Term of Imprisonment (if applicable):**   N/A
* **Max. Supervised Release:**   Three (3) years
* **Max. Fine:**   $53,007,672   (18 U.S.C. § 3571(d))

Count #: 3

   Conspiracy to Commit Money Laundering

   18 U.S.C. § 1956(h)

* **Max. Term of Imprisonment:**   Ten (10) years' imprisonment
* **Mandatory Min. Term of Imprisonment (if applicable):**   N/A
* **Max. Supervised Release:**   Three (3) years
* **Max. Fine:**   $53,007,672   (18 U.S.C. § 3571(d))

**\*Refers only to possible term of incarceration, supervised release and fines.   It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.**

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

PENALTY SHEET

**Defendant's Name:**  **CRISTIAN PATRICIO PINTADO GARCIA**

**Case No:** _____

Count #: 4-7

Engaging in Transactions in Criminally Derived Property

18 U.S.C. §§ 1957 and 2

* **Max. Term of Imprisonment:**   Ten (10) years' imprisonment
* **Mandatory Min. Term of Imprisonment (if applicable):**   N/A
* **Max. Supervised Release:**   Three (3) years
* **Max. Fine:**   $53,007,672   (18 U.S.C. § 3571(d))

**\*Refers only to possible term of incarceration, supervised release and fines.   It does not include
restitution, special assessments, parole terms, or forfeitures that may be applicable.**

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name:** LUIS LENIN MALDONADO MATUTE

**Case No:**

Count #: 1

Conspiracy to Violate the Foreign Corrupt Practices Act

18 U.S.C. § 371

* **Max. Term of Imprisonment:** Five (5) years' imprisonment
* **Mandatory Min. Term of Imprisonment (if applicable):** N/A
* **Max. Supervised Release:** Three (3) years
* **Max. Fine:** $53,007,672   (18 U.S.C. § 3571(d))

Count #: 2

Foreign Corrupt Practices Act

15 U.S.C. § 78dd-2; 18 U.S.C. § 2

* **Max. Term of Imprisonment:** Five (5) years' imprisonment
* **Mandatory Min. Term of Imprisonment (if applicable):** N/A
* **Max. Supervised Release:** Three (3) years
* **Max. Fine:** $53,007,672   (18 U.S.C. § 3571(d))

Count #: 3

Conspiracy to Commit Money Laundering

18 U.S.C. § 1956(h)

* **Max. Term of Imprisonment:** Ten (10) years' imprisonment
* **Mandatory Min. Term of Imprisonment (if applicable):** N/A
* **Max. Supervised Release:** Three (3) years
* **Max. Fine:** $53,007,672   (18 U.S.C. § 3571(d))

**\*Refers only to possible term of incarceration, supervised release and fines.  It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.**

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name:** **LUIS LENIN MALDONADO MATUTE**

**Case No:** _____

Count #: 4-7

Engaging in Transactions in Criminally Derived Property

18 U.S.C. §§ 1957 and 2
\* **Max. Term of Imprisonment:**  Ten (10) years' imprisonment
\* **Mandatory Min. Term of Imprisonment (if applicable):**  N/A
\* **Max. Supervised Release:**  Three (3) years
\* **Max. Fine:**  $53,007,672    (18 U.S.C. § 3571(d))

**\*Refers only to possible term of incarceration, supervised release and fines.  It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.**